Richard and Mary GUZMAN,
Appellants,

v.

**WESTERN STATE BANK OF DEVILS
LAKE, NORTH DAKOTA, a North
Dakota Corporation, et al., Appellees.**

No. 74–1740.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 9, 1975.

Decided March 11, 1975.

David R. Bossart, Conmy, Feste &
Bossart, Michael O. McGuire, Schuster,
Ramlo & McGuire, Ltd., Fargo, N. D.,
for appellants.

Evan F. Heustis, Devils Lake, N. D.,
and Kermit Edward Bye, Fargo, N. D.,
for appellees.

Before MATTHES, Senior Circuit
Judge, and STEPHENSON and WEB-
STER, Circuit Judges.

MATTHES, Senior Circuit Judge.

The appeal in this action for declarato-
ry and monetary relief presents for our
review the question whether North Da-
kota's prejudgment attachment statute,
North Dakota Century Code [N.D.C.C.]

Chapter 32–08, is unconstitutional on its face or as applied in the attachment proceeding giving rise to this federal action. Plaintiff-appellants contend that the *ex parte* attachment and seizure by defendants of a mobile home in which plaintiffs had property rights and in which they resided and the seizure of plaintiffs' automobile denied plaintiffs due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution.

In addition to Western State Bank of Devils Lake, North Dakota, defendants named in the amended complaint were Lyle Fering, individually and as President of the bank; James Kuchar, individually and as Vice-President of the bank; Bill Johnson, d/b/a Bill's Mobile Homes in Devils Lake, North Dakota; and LeRoy Ouellette, individually and as Sheriff of Rolette County, North Dakota.

The United States District Court for the District of North Dakota, on the pleadings, interrogatories, depositions, and other documents, granted the defendants' motion for a summary judgment and dismissed plaintiffs' action. Plaintiffs have appealed. We reverse and remand.

A resume of the relevant facts antedating and contemporaneous with the seizure of plaintiffs' property by attachment will place the issue before us in proper perspective. In September of 1970, the Guzmans purchased a 1970 Medallion Mobile Home from Bill Johnson of Bill's Mobile Homes. The Guzmans executed a retail installment contract and security agreement in the amount of $8,900.25, which included physical damage and credit life insurance, with an additional $3,773 to be paid as finance charges. The financing contract was sold by Johnson to Western State Bank with recourse. Under the financing contract, the plaintiffs were obligated to make monthly installments to Western of $150.75, commencing October 14, 1970.

On January 28, 1972, the Guzmans borrowed another $310.98 from Western and executed a note under which they agreed to pay Western an additional $51.83 per month, commencing March 15, 1972. Western added the Chevrolet automobile to its previous financing statement and security agreement covering the Medallion Mobile Home. Between October 14, 1970, and March 5, 1973, the Guzmans paid Western approximately $4,075.

Numerous complaints were made by the Guzmans to both Johnson and Western in regard to claimed defects in the trailer. The problems related to defective windows and doors and the heating system. The defects, which permitted the cold air to penetrate the interior of the mobile home, caused Mr. Guzman to purchase an inordinate amount of propane fuel. This, in turn, rendered it difficult for the Guzmans to maintain their payments to the bank. After considerable correspondence relating to the Guzmans' delinquency on the payments, Western filed an action on March 5, 1973 against the Guzmans in a North Dakota state court seeking a money judgment for the balance due on the mobile home contract and the automobile note.

On the same day, Kuchar, Vice-President of the bank, acting pursuant to N.D.C.C. § 32–08–05, filed the following affidavit:[1]

> James Kuchar, being first duly sworn, deposes and says; that he is a Vice President of the Western State

---

1. 32–08–05 provides:
   At the time of applying for the warrant of attachment, the plaintiffs shall file in the office of the clerk of the court in which the action is commenced:
   1. A verified complaint setting forth a proper cause of action for attachment in favor of the plaintiff and against the defendant;
   2. An affidavit setting forth in substantially the language of the statute one or more of the grounds of attachment enumerated in section 32–08–01, if the claim upon which the action is commenced is due, and, if such claim is not due, one or more of the grounds enumerated in subsections 3, 4, 6, and 7 of that section; and
   3. An undertaking in accordance with section 32–08–06.

Bank of Devils Lake, North Dakota; that the verified Complaint in the above entitled action is brought to recover purchase money for personal property sold to the defendants and that the amounts set out in the complaint is now due and owing to the plaintiff.

The bank also filed a bond as required by N.D.C.C. § 32–08–06. Thereupon a warrant of attachment was issued by the clerk of the court, as provided by § 32–08–04. Armed with the warrant of attachment, Sheriff Ouellette proceeded to the mobile home, which was occupied by the Guzmans and some of their children. Defendant Kuchar and defendant Johnson were at the mobile home when the sheriff arrived, or appeared shortly thereafter. Neither Mr. Guzman, a county social worker, nor Mrs. Guzman, a community health representative, was at the mobile home, although Mrs. Guzman arrived there shortly thereafter in response to a telephone call from Sheriff Ouellette. Her efforts to dissuade the sheriff and Kuchar from taking possession of and moving the mobile home were of no avail. After removing the stripping which surrounded the bottom of the mobile home unit, an attempt was made by Johnson or his representative to move the mobile unit with Johnson's truck. The attempt failed, however, because the wheels of the trailer were frozen in the ground. Arrangements were then made to secure a John Deere tractor. The tractor and the truck together were able to remove the home from its location. It was taken by the sheriff to Rolla, North Dakota, and subsequently removed to another location. It stands undisputed that about four and one-half hours were required to remove the mobile home unit. The automobile was also seized under the warrant of attachment. Mr. Guzman, who was on duty during all of this time, was completely unaware of what was taking place until he arrived at the site of his former home, at which time the sheriff served upon Guzman the warrant of attachment and other papers issued by the state court.

Thereafter this action was filed in the United States District Court and, by leave, plaintiffs were permitted to file an amended complaint on October 16, 1973. Jurisdiction was premised under 28 U.S.C. §§ 1331(a), 1343(3), 1343(4), 2201, 2202, and 42 U.S.C. § 1983. Plaintiffs sought a judgment declaring (a) that N.D.C.C. Chap. 32–08 was unconstitutional on its face and (b) that the seizure of plaintiffs' residence and automobile did not comport with the requirements of due process as guaranteed by the fourteenth amendment. Additionally, plaintiffs sought actual and punitive damages, but did not seek injunctive relief. The state court proceedings have been stayed pending the determination of this case.

Clearly, we must focus upon three recent Supreme Court decisions, Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); and Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), particularly the *Mitchell* case.

The rights of prejudgment creditors were first significantly eroded in Sniadach v. Family Finance Corp., *supra,* where the Court overturned a Wisconsin statute which allowed a debtor's wages to be garnished by a court summons issued by the court clerk on the request of a creditor. The debtor was not accorded a hearing before the seizure and was unable to quash the garnishment suit. Mr. Justice Douglas held that there were no extraordinary circumstances justifying such a summary procedure, and that therefore the Wisconsin statute denied the debtor due process.[2] He also emphasized the drastic consequences a wage

---

2. A fundamental concept in all of the cases relevant to this appeal, including *Mitchell,* is that a debtor has a constitutionally protectible property interest in the items or funds seized by the creditor, even if the debtor does not have full title to them. *See also* Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

garnishment may have upon the debtor, consequences which could "drive a wage-earning family to the wall." 395 U.S. at 341–342, 89 S.Ct. at 1823.

In Fuentes v. Shevin, supra, the Supreme Court extended the Sniadach reasoning to summary prejudgment remedies other than garnishment, overturning Florida and Pennsylvania replevin statutes. The Court in Fuentes pointed out that the Florida statute did not require the applicant to make a convincing showing before seizure that the goods were, in fact, "wrongfully detained." 407 U.S. at 73–74, 92 S.Ct. 1983. Rather, the writ of replevin issued upon the bare conclusory allegations of the creditor. Under the Pennsylvania statute, the creditor did not have to initiate court action for repossession or even allege that he was lawfully entitled to the property, and the debtor had to initiate legal proceedings himself to regain possession. 407 U.S. at 77–78, 92 S.Ct. 1983.

The Fuentes Court concluded that even a temporary taking of property was a deprivation of property rights, thereby invoking fourteenth amendment due process consideration. Thus, the broad ruling of Fuentes seemed to be that, except for a few "extraordinary situations,"[3] there had to be an opportunity for a hearing for the debtor before there could be a prejudgment seizure of goods. See generally Note, Procedural Due Process—The Prior Hearing Rule and the Demise of Ex Parte Remedies, 53 B.U.L.Rev. 41 (1973). Moreover, the Court explicitly declined to limit its holding in the case to replevin of items that were "necessities of life." 407 U.S. at 88–90, 92 S.Ct. 1983.

Obviously, under the reasoning of Fuentes the North Dakota Act in question is unconstitutional, since there is no hearing prior to seizure. But Fuentes was subsequently limited by Mitchell v. W. T. Grant, supra.

In Mitchell, the Court considered the provisions of Louisiana Code of Civil Procedure which made available to a mortgagor or lien holder a writ of sequestration to forestall waste or alienation of the encumbered property. The issue, similar to that in Sniadach and Fuentes, was whether the sequestration violated the Due Process Clause of the fourteenth amendment because it was ordered ex parte, without prior notice to the debtor or opportunity for a hearing. The majority, Mr. Justice Powell filing a concurring opinion, sustained the Louisiana Act.

In Fuentes, the majority had emphasized that the debtor had certain proprietary rights in the goods summarily seized; in Mitchell, the Court pointed out that the creditor also had an interest in the property in question, and reasoned that in some cases this interest of a creditor could by adequately preserved only by means of a summary sequestration of the property. Consequently, the Court in Mitchell established a constitutional balancing test by which the conflicting interest of the state in providing protection for the creditor's proprietary rights by summary seizure and of the debtor in avoiding a wrongful seizure of property in his possession are to be weighed in determining if due process has been afforded. The balancing test in Mitchell has been characterized in the following manner:

> Under such a test, the Court will determine the need for particular procedural safeguards by comparing the extent to which they further the defendant's interest in avoiding a wrongful or arbitrary deprivation of his property with their negative effect upon the interests of the state in providing protective creditor remedies. If, on balance, the potential for harm to the defendant under the state-adopted procedure is slight, in light of substantial advancement of a legitimate state interest in providing ex parte preliminary relief, the prejudgment procedure will be upheld as a "constitutional accommodation of the conflicting interests."

---

**3.** Primarily having to do with governmental seizures to protect the general public health or welfare. See 407 U.S. at 90–92, 92 S.Ct. 1983.

The Supreme Court, 1973 Term, 88 Harv. L.Rev. 41, 75 (1974).

The district judge and the defendants in our case regard *Mitchell* as supportive of the North Dakota statutory scheme under attack here. We take a different view of *Mitchell* and hold that because of vital distinctions between the provisions of the Louisiana sequestration law and the North Dakota attachment statute, *Mitchell* dictates that plaintiffs were denied due process of law.

## I

In achieving a constitutional accommodation of the interests of the debtor and creditor, the issuance and supervision of the warrant of attachment is of vital importance. Only if certain procedural safeguards are included in the attachment process will the possibility of a wrongful taking from the debtor be minimized and the seizure of the goods without prior notice and hearing thereby fall within the limits of tolerance of due process. The statutory scheme of North Dakota, tested by the *Mitchell* standard, is, in our view, fatally defective.

## A

Under the Louisiana sequestration statute, the writ will not issue on a conclusory allegation of ownership or possessory rights. Moreover, the power of the debtor to conceal or transfer the merchandise to the detriment of the creditor "is one of the considerations weighed in the balance by the Louisiana law in permitting initial sequestration of the property." 416 U.S. at 609, 94 S.Ct. at 1900. Under N.D.C.C. § 32–08–01, the danger of concealment or disposal of the goods or the possibility of removal of the merchandise from the state by the debtor need not be asserted as general prerequisites for obtaining a warrant of attachment, but rather are only several of nine grounds which the creditor may assert in his affidavit seeking the warrant of attachment.[4] Moreover, the creditor in our case cited § 32–08–01(8) as justifying the attachment in this case, the most general of the nine grounds listed.[5]

---

**4.** 32–08–01. When property may be attached. —In an action on a contract or judgment for the recovery of money only, for the wrongful conversion of personal property, or for damages, whether arising out of contract or otherwise, the plaintiff, at or after the commencement thereof, may have the property of the defendant attached in the following cases:

1. When the defendant is not a resident of this state or is a foreign corporation;
2. When the defendant has absconded or concealed himself;
3. When the defendant has removed or is about to remove his property, or a material part thereof, from this state, not leaving enough therein for the payment of his debts;
4. When the defendant has sold, assigned, transferred, secreted, or otherwise disposed of, or is about to sell, assign, transfer, secrete, or otherwise dispose of his property, with intent to cheat or defraud his creditors, or to hinder or delay them in the collection of their debts;
5. When the defendant is about to remove his residence from the county where he resides with the intention of permanently changing the same, and fails or neglects upon demand to give security for the debt upon which the action is commenced;
6. When the debt upon which the action is commenced was incurred for property obtained under false pretenses;

7. When the defendant is about to remove his property or a material part thereof from the state with the intent or to the effect of cheating or defrauding his creditors or hindering or delaying them in the collection of their debts;
8. In an action to recover purchase money for personal property sold to the defendant, an attachment may be issued and levied upon such property; and
9. In any action brought against the owner of any motor vehicle for damages alleged to have been caused by the negligence of such owner or his duly authorized agent, the motor vehicle alleged to have been driven, occupied, or owned by a negligent driver or owner thereof, at the time of such accident, may be attached.

**5.** The bank officers urge that, in addition to the stated ground in the affidavit, waste was being committed on the mobile home which threatened to greatly reduce the value of the home. But if supervision of the attachment proceedings by a judge or other neutral official is to have any significance, *see* part IB, *infra*, the grounds justifying the *ex parte* seizure must be presented to the supervising judge or official at the time of the issuance of the writ in order that he may determine if attachment without a hearing is constitutionally appropriate. The statute does not contemplate rehabilitating the affidavit by facts not revealed to

Reviewing the affidavit submitted in the present case, we do not believe that it is sufficient. The affidavit of Kuchar and the bank's complaint in the action on the debt, both filed in conjunction with the request for a warrant of attachment, satisfy the requirement of *Fuentes* and *Mitchell* that the attachment be based upon more than conclusory allegations of ownership or possessory rights: in this instance the documents filed by the bank in support of the warrant of attachment showed the precise nature and the amount of the claim against the Guzmans. Nevertheless, the affidavit of defendant Kuchar does not aver that the summary attachment was necessary to preserve the property interests of the creditor in the personalty, nor does the North Dakota attachment law require such an averment.

■ Clearly, the *ex parte* attachment of property in the possession of the debtor is a drastic remedy, and the *Mitchell* opinion suggests that the remedy should be employed to protect a creditor's interest only if there is a danger that those interests will be destroyed or defeated unless such a summary step is taken.[6] In the absence of an assertion in the affidavit that the creditor believes that the property will be concealed, disposed of, or destroyed and the creditor's interest therein lost or defeated, we do not believe that the *ex parte* issuance of the warrant of attachment is justified. *Accord* Garcia v. Krausse, 380 F.Supp. 1254, 1258 (S.D.Tex.1974); Woods v. State of Tenn., 378 F.Supp. 1364, 1366 (W.D. Tenn.1974) (three-judge court). *See also* Note, 41 Brooklyn L.Rev. 380 (1974). If

such an emergency situation does not exist, the creditor's interest in the property probably will not be impaired by a short delay to provide notice and hearing to the debtor.

**B**

In Orleans Parish of Louisiana, the writ of sequestration is issued by the judge. In North Dakota, the warrant of attachment "shall be issued by the clerk of the court in which the action is commenced." N.D.C.C. § 32–08–04. The defendants in this case seek to minimize the absence of judicial supervision of the North Dakota attachment proceedings by citing language from Mr. Justice Stewart's dissent in *Mitchell*: "[T]he fact that the official who signs the writ after the *ex parte* application is a judge instead of a court clerk is of no constitutional significance." 416 U.S. at 632, 94 S.Ct. at 1912. But Mr. Justice White's majority opinion in *Mitchell* cast the role of the supervising judge in a different light. Indeed, throughout his opinion Justice White emphasized the necessity of judicial supervision of the proceedings. Thus he observed:

> Mitchell was not at the unsupervised mercy of the creditor and court functionaries. The Louisiana law provides for judicial control of the process from beginning to end. This control is one of the measures adopted by the State to minimize the risk that the *ex parte* procedure will lead to a wrongful taking.

416 U.S. at 616–17, 94 S.Ct. at 1904. Similarly, Justice White noted that "the approval of a writ of sequestration is

---

the supervising judge or official and first obtained after the levy has been effected. *Cf.* Rice v. Wolff, 513 F.2d 1280, 1286–1288 (8th Cir. 1975).

**6.** In fact, the Supreme Court in *Mitchell* most frequently spoke of a necessary averment that it is "within the power" of the debtor to damage, alienate, or waste the goods, rather than a more specific averment that the creditor has "good reason to fear" that the debtor will so act. *See, e. g.,* 416 U.S. at 605 n. 4, 94 S.Ct. 1895. That the Court considered an averment of this power of the debtor to be a sufficient allegation of the need for summary action is

attributable to the unusual provision of Louisiana law that the vendor's lien expires if the buyer transfers possession of the encumbered goods. 416 U.S. at 608–609, 94 S.Ct. 1895.

Viewing the facts of *Mitchell* in this light, we believe that the mere averment that the debtor has the power to damage, alienate, or conceal the goods does not in itself sufficiently state an immediate threat to the creditor's property interest justifying *ex parte* attachment when under state law the creditor's vendor's lien will not be destroyed by transfer of possession by the debtor. *See* Note, 41 Brooklyn L.Rev. 380, 386–388 (1974).

not, as petitioners contend, a mere ministerial act." 416 U.S. at 616 n. 12, 94 S.Ct. at 1905. *See also* 416 U.S. at 620 n. 14, 94 S.Ct. 1895. Clearly, the Court in *Mitchell* believed that the active participation of a judge, exercising judicial discretion whenever necessary, would aid in minimizing the likelihood of an improvident issuance of a writ of sequestration. In addition, the supervising judge probably should exercise his discretion to consider whether the impact on the debtor of even a temporary deprivation of the property outweighs the interest of the creditor or the state in affording the creditor *ex parte* attachment. *See* part II, *infra*.

Whatever may be the realities of the role of the judiciary in the issuance of sequestration writs in Orleans Parish, it is obvious that the majority opinion in *Mitchell* mandates that we review the North Dakota attachment law to determine if there is meaningful judicial supervision of the prejudgment attachment process. It is apparent that there is no such supervision.[7]

C

The Supreme Court in *Mitchell* viewed as important the right of the Louisiana debtor to an immediate and full hearing on the matter of possession following the execution of the writ, a hearing at which the writ must be dissolved unless the creditor "proves the grounds upon which the writ was issued." La.Code Civ.Proced. Art. 3506. The *Mitchell* Court noted that this provision cuts "to a bare minimum the time of creditor or court supervised possession." 416 U.S. at 610, 94 S.Ct. at 1901. N.D.C.C. § 32–08–24 allows the North Dakota debtor a hearing to seek discharge of the warrant of attachment. According to N.D.C.C. § 32–08–18 the debtor may seek discharge "at any time after he has appeared in the action and before final judgment." If the hearing court finds "that the attachment was irregularly issued, or the affidavit upon which it was issued is untrue, the attachment must be discharged." N.D.C.C. § 32–08–24. This section has been construed by the North Dakota Supreme Court as placing upon the creditor the burden "to show that the grounds [upon which the warrant of attachment was issued] alleged in the affidavit actually existed, and, if the [creditor] fails to sustain such burden, the attachment must be dissolved." Page v. Steinke, 60 N.D. 685, 690, 236 N.W. 261, 263 (1931). *See also* Quality Builders, Inc. v. Hahn, 134 N.W.2d 577, 583 (N.D.1965). Thus it would appear that the provision for discharge provided by the North Dakota statute is similar in scope to the Louisiana counterpart allowing a debtor to seek immediate dissolution of a writ of sequestration.

Nevertheless, as we read the North Dakota statutory provisions for post-seizure discharge of the warrant of attachment, N.D.C.C. §§ 32–08–18 to 32–08–24, in order to obtain such a post-seizure hearing the debtor must first furnish an undertaking, or bond, equal to the value of the property seized, whereas no such bond requirement appears in the Louisiana statute. We consider this distinction significant. The bond requirement places a considerable impediment on any debtor who seeks to contest the attachment of any item of substantial value, and to the extent that any debtor is unable to meet the bond requirement in order to obtain a discharge hearing, the goal of minimizing the impact on the debtor of a wrongful attachment has been undermined.

---

**7.** We recognize that in the most recent decision by the Supreme Court in this area of the law, North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), there are suggestions in the concurring and dissenting opinions that some of the justices do not believe that supervision of the *ex* parte proceeding by a *judicial* officer is required. 419 U.S. at 609, 95 S.Ct. at 723 (Powell, J., concurring); 419 U.S. at 614, 95 S.Ct. 726 (Blackmun, J., dissenting). Nevertheless, we are compelled to observe the criterion established by the opinion in *Mitchell* until instructed otherwise by the Court.

## ·II

In *Mitchell*, personal property consisting of a refrigerator, range, stereo, and washing machine, were the subject of the writ of sequestration. Here, as noted, a mobile home constituting the only residence of the Guzman family was seized and removed under the warrant of attachment.[8] Although the characteristics of the instant property, standing alone, might not necessarily defeat the right of attachment, certainly it merits consideration in connection with the balancing test promulgated in *Mitchell*. Indeed, Mr. Justice White's opinion indicates that in some instances the impact of the deprivation of the debtor may override "his inability to make the creditor whole for wrongful possession, the risk of destruction or alienation if notice and a prior hearing are supplied and the low risk of a wrongful determination of possession through the procedures now employed." 416 U.S. at 610, 94 S.Ct. at 1901. Consideration of the impact of the deprivation on the debtor is not solely a matter for the legislature in establishing public policy. Rather, under *Mitchell* it is a factor to be weighed in determining if concepts of due process validate specifically the *ex parte* seizure under review.

We believe that on the facts of this case the impact upon the Guzmans of losing their sole residence outweighs the possible detriment to the property interest of the creditor in the mobile home.[9]

Here we have more than the inconvenience caused by the deprivation of some household items, the property seized in *Mitchell*. In this case we have debtors faced with the catastrophe of losing their home in an *ex parte* procedure by which they are summarily evicted without any opportunity to be heard and to resist the grounds for eviction.[10] Truly, these debtors were driven to the wall by the seizure of the mobile home. *Cf.* Sniadach v. Family Finance Corp., *supra*, 395 U.S. at 341–342, 89 S.Ct. 1820.

## III

Sheriff Ouellette submits that he is immune from liability because he was performing a ministerial act in executing a valid writ of attachment.

This court has held that a quasi-judicial form of immunity is extended to "police and other court officers" for purely ministerial acts when they do nothing more than perform orders issuing from a court. *See, e. g.,* Duba v. McIntyre, 501 F.2d 590, 592 (8th Cir. 1974). *See also* Rhodes v. Houston, 202 F.Supp. 624, 636 (D.Neb.) aff'd, 309 F.2d 959 (8th Cir. 1962).

This issue was not considered by the district court in granting summary judgment, and we are not inclined to hold as a matter of law, on review of the summary judgment proceeding, that quasi-judicial immunity extended to the sheriff.

---

8. In addition, the sheriff seized the debtors' automobile. Usually, the impact upon the debtor of losing his automobile will not be as great as losing his home. Nevertheless, we point out that in some instances the loss of his car may have a severe impact upon the debtor, such as when the automobile is used in pursuing his livelihood. *Cf.* Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

9. In any event, there appears little likelihood that this mobile home would have been removed, concealed, or effectively disposed of by the debtors to the detriment of the creditor.

10. Significantly, the North Dakota legislature apparently has recognized the severe consequences which a debtor may suffer from the loss of his mobile home: a North Dakota debt-or's mobile home is exempt from levy by judgment creditors. N.D.C.C. § 28–22–02(10).

Furthermore, N.D.C.C. § 32–08–10 provides that the levy under a warrant of attachment must be made "upon personal property which by reason of its bulk or other cause cannot be removed immediately, . . . by the sheriff's filing with the register of deeds of the county in which such property is situated . . . a notice" stating the names of the parties to the action, the amount of the plaintiff's claims as stated in the warrant and a description of the property levied upon. Considering that the mobile home was bulky and could not be removed immediately, arguably the constructive attachment provision could have been utilized. However, according to the sheriff's deposition he was not even aware of his power to constructively levy the warrant of attachment.

It may well be that the sheriff is clothed with immunity, but inasmuch as this action must be remanded for further proceedings, the question of quasi-judicial immunity should be resolved upon a ventilation of all of .the facts bearing upon that issue.

### IV

 In summary, we conclude for the following reasons that the statutory attachment procedure of North Dakota Century Code Chapter 32–08 does not achieve the constitutional accommodation of the conflicting interests of the debtor and the creditor as required by *Mitchell*:

1. Lack of a requirement that the affidavit supporting the request for the warrant of attachment alleged the need for summary procedure in order to avoid removal, destruction, or concealment of the property or loss of the creditor's proprietary interests therein;

2. Lack of adequate judicial supervision by requiring issuance of the warrant of attachment by the judge of the court instead of the clerk;

3. Failure to provide the debtor with opportunity to seek discharge of the warrant of attachment without posting bond.

4. Finally, the impact upon the plaintiff-debtors resulting from the physical seizure and removal of their sole residence outweighs, on the facts of this case, the state's interest in providing *ex parte* preliminary relief for the creditors of plaintiffs.

For lack of a constitutional accommodation as taught by *Mitchell*, we hold that the seizure of plaintiffs' mobile home constituted a denial of due process of law as under the Fourteenth Amendment.

The judgment of the district court is vacated and the cause is remanded to the district court for further proceedings.