## PDS ENGINEERING AND CONSTRUCTION, INC. *v.* DOUBLE RS ET AL.

SUPERIOR COURT        JUDICIAL DISTRICT OF        FILE No. 378684S
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed April 8, 1992

*Halloran & Sage,* for the plaintiff.

*Francis R. Sablone, Jr.,* for the named defendant et al.

*Pepe & Hazard* and *O'Connell, Flaherty, Attmore & Forsyth,* for the defendant United Bank and Trust Company (Fleet Bank).

*Ericson, Scalise & Mangan,* for the defendant Eastern Sewer Pipe Corporation.

*Constantine Constantine,* for the defendant G and R Valley, Inc.

*Roggi & Stuhlman,* for the defendant Ronald Guimond.

No appearance for the defendants Salvatore Russo and Joseph D. Russo.

SATTER, J. The plaintiff, PDS Engineering and Construction, Inc. (PDS), moves for reconsideration of this court's earlier decision, dated December 18, 1991, denying priority of PDS' lien over the mortgage of a defendant, United Bank and Trust Company (United Bank). The court had based its holding on the ground that the Connecticut mechanic's lien law, General Statutes § 49-33 et seq., does not afford United Bank the right to a hearing to contest PDS' lien at a meaningful time and in a meaningful manner. In so concluding, the court relied primarily on *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* 168 Conn. 371, 362 A.2d 778, vacated, 423 U.S. 809, 96 S. Ct. 20, 46 L. Ed. 2d 29 (1975), on remand, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976), and on *Connecticut* v. *Doehr,* 501 U.S. 1, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991).

PDS challenges the court's conclusion, asserting that the pattern of statutes constituting the state's mechanic's lien law, § 49-33 et seq., does create rights in United Bank to a hearing that meets constitutional muster, particularly when the interests of PDS as mechanic's lienor and United Bank as mortgagee are appropriately balanced. PDS points specifically to General Statutes §§ 49-39, 49-35a (c), 49-37 and 49-51.

At the hearing on the motion, this court granted the motion to reconsider, and set aside its judgment pending its decision after reconsideration. On reconsideration, the court reverses itself and finds the mechanic's lien law constitutional as applied to United Bank.

Section 49-39 provides that a foreclosure action on a mechanic's lien must be brought within one year of the recording of the lien and § 49-35a (c) provides that a party to the foreclosure action may move to have the lien discharged. PDS argues that the *Doehr* standards, discussed in this court's earlier memorandum of decision, imply that in determining compliance with due process, account should be taken of the private interest of the party affected by the lien compared with that of the party seeking the lien for its protection. When that comparison is made in the present case, PDS argues, the potential one year delay for United Bank to challenge PDS' lien, pursuant to § 49-35a (c), is not a denial of due process.

This court, while hearing foreclosure cases for the last three years, has observed that in at least one third of such cases, the plaintiff is the assignee of the original mortgagee bank. This lends justification for the court's taking judicial notice of the commercial practice of banks assigning mortgages among themselves in a secondary market.

On the other hand, banks have ways of protecting themselves from mechanic's liens. The two most obvious ones are obtaining waivers from mechanic's lienors and obtaining title insurance. United Bank knew that PDS had done work on the property in issue before placing its mortgage and yet, unaccountably, failed to get a lien waiver from PDS. Also, United Bank did acquire title insurance and, in fact, the present case is being pursued on its behalf by a title insurance company. (In *Spielman-Fond, Inc.* v. *Hanson's, Inc.,* 379 F. Sup. 997, 999 [D. Ariz.], aff'd, 417 U.S. 901, 94 S. Ct. 2596, 41 L. Ed. 2d 208 [1973], the court notes that title insurance may ameliorate the impact of a mechanic's lien.)

In the present case, the certificate of mechanic's lien was filed by PDS on the land records on February 1,

1990. This foreclosure action was initiated by PDS on May 18, 1990, and United Bank was duly made a party. At that time United Bank had the right under § 49-35a (c) to move that the lien be declared invalid as to it. United Bank did nothing until the present case came up for trial in January, 1991, at which time it resisted PDS' motion for determination of priorities. This delay by United Bank indicates that the filing of the mechanic's lien caused it little actual hardship.

On the other hand, PDS asserts that its interest in the mechanic's lien is substantial because the lien is the only way to secure payment for the services it rendered to improve the property.

In *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* supra, 381, the Supreme Court commented that a six month delay in the right to attack a mechanic's lien constituted "the bare minimum of due process protection consistent with the extent of the deprivation present."

Although the court in *Roundhouse* was speaking of the deprivation of property owners as opposed to that of mortgagees, in *General Electric Supply Co.* v. *Southern New England Telephone Co.,* 185 Conn. 583, 592, 441 A.2d 581 (1981), the court indicated that "a strong prima facie case" was made that the one year time period within which a lienor must foreclose under § 49-39, so as to give a general contractor the right to challenge the lien under § 49-35a (c), operated to deprive the general contractor of a prompt hearing.

Thus, this court concludes that even when balancing the interests of United Bank and PDS, §§ 49-39 and 49-35a (c) do not satisfy due process hearing requirements.

Section 49-37 provides that whenever a mechanic's lien is placed on real property, the owner of that prop-

erty, "or any person interested in it," may apply to a Superior Court judge that the lien be dissolved upon the substitution of a bond with surety. Section 49-37 (b) (1) provides that when a bond has been substituted for a lien, the principal or surety on the bond may apply to the Superior Court in order that "*a hearing be held to determine whether the lien for which the bond was substituted should be declared invalid* or reduced in amount." (Emphasis added.)

PDS contends that this statute gives United Bank, as principal on a bond, the right to as immediate a hearing as feasible to contest PDS' lien. United Bank asserts that this statute serves an entirely different purpose and cannot be applied to give United Bank the hearing required by the due process clause.

Section 49-37 is designed to facilitate the transfer of real property by creating a mechanism for removing a mechanic's lien from the land records and substituting it for a bond. *Henry F. Raab Connecticut, Inc.* v. *J. W. Fisher Co.,* 183 Conn. 108, 116, 438 A.2d 834 (1981); *Six Carpenters, Inc.* v. *Beach Carpenters Corporation,* 172 Conn. 1, 6, 372 A.2d 123 (1976). That purpose, however, does not preclude filing the bond as a way to challenge the lien. In *Henry F. Raab Connecticut, Inc.* v. *J. W. Fisher Co.,* supra, a subcontractor filed a bond in order to contest the merits of the lien of another subcontractor so that it might satisfy its obligation under an agreement with the general contractor.

United Bank contends that the language in § 49-37 that the court "should determine whether the lien . . . should be declared invalid" means that the court is restricted to finding the lien to be of no legal force and effect, and that it cannot decide the priority of liens. In support of this argument, United Bank points to § 49-34, which specifies requirements for making a

mechanic's lien "valid." Those include: (1) lodging a mechanic's lien certificate with the town clerk where the property is located within ninety days after work ceases; (2) requiring that the certificate state certain particulars, and be subscribed and sworn to by the claimant; and (3) requiring that the certificate be served on the landowners within thirty days after it is filed with the town clerk.

No legislative history reveals the meaning of "invalid" as used in § 49-37. On the theory that the mechanic's lien should be construed "so as to reasonably and fairly carry out its remedial intent"; *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.*, supra, 385; this court interprets "invalid" to mean either legally insufficient absolutely or specifically as to a particular party having an interest in the property. The purpose of § 49-37 is carried out when the lien can be attacked both to declare it entirely invalid or to declare it invalid only as to a party who is adversely affected by it. Consequently, United Bank had the power under § 49-37, if it filed a bond, to assert the priority of its mortgage over the PDS lien.

The major question raised by the application of § 49-37 to the present case is whether or not the requirement that United Bank file a bond as a precondition to a hearing is itself a denial of the due process right to a hearing.

The court approached this issue in *General Electric Supply Co.* v. *Southern New England Telephone Co.*, supra, 591, when it stated: "The statutory requirement that any interested party other than the property owner must post a bond to obtain a hearing on a mechanic's lien raises serious doubts about the constitutionality of our statutory scheme."

The court then noted that courts in other jurisdictions are divided in their results, citing cases it claimed

came down on both sides of the issue. It observed, "[i]n light of the year that may elapse before a lienor must either foreclose or forfeit his lien, the defendants have made out a strong prima facie case that our statutes may operate to deprive a general contractor of a prompt hearing." Id., 592.

This observation of the Supreme Court in *General Electric Supply Co.*, however, is dicta because the court determined that the general contractor's claim that the property owner withheld funds from it as a result of a subcontractor's mechanic's lien, did not provide the proper grounds for testing the general contractor's constitutional challenge to the mechanic's lien law. Id., 594.

Of the cases cited by the Supreme Court in *General Electric Supply Co.*, on the issue of the constitutionality of requiring a bond as a condition to the right to a hearing to contest an attachment, the clearest holding is *Guzman* v. *Western State Bank of Devils Lake, North Dakota*, 516 F.2d 125 (8th Cir. 1975). The facts in that case were as follows. The plaintiff had purchased a mobile home under a retail installment contract. He lived in the home with his wife and children. The plaintiff complained that the mobile home was defective, particularly because of poorly sealed doors and windows, which caused him to pay inordinately high heating bills, which, in turn, caused him to fall behind on his installment payments. The bank brought an action for the balance due on the contract, and simultaneously attached the mobile home under the North Dakota prejudgment remedy statute. Despite the protests of the plaintiff's wife, a sheriff had the home removed to another location. Under that North Dakota statute, a debtor is not entitled to a postseizure hearing unless he first furnishes a bond or undertaking equal to the value of the property seized.

The federal appeals court in *Guzman* v. *Western State Bank of Devils Lake, North Dakota,* supra, 131, held this limitation on the right to a hearing to be one factor in declaring the North Dakota statute unconstitutional. That court stated: "The bond requirement places a considerable impediment on any debtor who seeks to contest the attachment of any item of substantial value, and to the extent that any debtor is unable to meet the bond requirement in order to obtain a discharge hearing, the goal of minimizing the impact on the debtor of a wrongful attachment has been undermined." Id.

In *North Georgia Finishing, Inc.* v. *Di-Chim, Inc.,* 419 U.S. 601, 613, 95 S. Ct. 719, 42 L. Ed. 2d 751 (1975), in which the court declared a Georgia garnishment statute violative of the due process clause of the fourteenth amendment, Justice Powell, in concurring, commented: "As noted above, the issuance of the garnishment may impose serious hardship on the debtor. In this context, due process precludes imposing the additional burden of conditioning the debtor's ability to question the validity of its issuance or continuation on the filing of the bond."

Justice Powell, however, cited no authority for his comment, and careful research discloses no general rule that the requirement of a bond as a precondition to a hearing or to access to the courts is a denial of due process rights. Bond requirements are rampant in our law. Under General Statutes § 52-472, a temporary injunction cannot be issued without a bond being posted to answer all damages in case the plaintiff fails to prosecute the action to effect. Under General Statutes § 52-278d (c), a stay of a prejudgment remedy requires a bond to indemnify the adverse party for damages that may accrue as a result of the stay. Moreover, in many states the attaching creditor must put up a bond, equal to the amount of the attachment, to indemnify the

debtor. See lists of states requiring bonds in *Connecticut* v. *Doehr,* supra, 24–26. Requiring a similar bond of a mortgagee or other lienor (but not of a property owner) challenging a mechanic's lien strikes a symmetrical note of fairness.

Due process, Justice Frankfurter reminded us in his concurring opinion in *Joint Anti-Fascist Refugee Committee* v. *McGrath,* 341 U.S. 123, 162, 71 S. Ct. 624, 95 L. Ed. 817 (1951), "unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." Moreover, this court must determine the constitutional issue here presented on the facts of the present case as they impact on the party challenging the constitutionality of the statute. *General Electric Supply Co.* v. *Southern New England Telephone Co.,* supra, 593.

In *Guzman* v. *Western State Bank of Devils Lake, North Dakota,* supra, 132, the court considered the competing interests of the creditor and debtor and stated: "We believe that *on the facts of this case* the impact upon the [plaintiff's] of losing their sole residence outweighs the possible detriment to the property interest of the creditor in the mobile home . . . . In this case we have debtors faced with the catastrophe of losing their home in an ex parte procedure by which they are summarily evicted without any opportunity to be heard and to resist the grounds for eviction. Truly these debtors were driven to the wall by the seizure of the mobile home." (Emphasis added.)

In contrast to the facts of *Guzman,* while United Bank has an interest in the land measured by its mortgage, it is a nonpossessory interest. The PDS mechanic's lien affects the priority of the bank's mortgage but it does not have the impact of an eviction as in *Guzman.* Thus *Guzman* is clearly distinguishable from the present case.

Moreover, United Bank has not shown it would incur any undue hardship in putting up a bond. In fact, the bank is assumed to be familiar with the necessity for bonds in commercial transactions and could hardly claim a bond in the present case would impose a burden. Since, when the due process clause is applied, account may be taken of the circumstances of the parties, this court concludes that requiring United Bank to file a bond as a condition to obtaining a hearing is not so onerous that it constitutes a denial of due process. Thus § 49-37 does accord United Bank the right to a prompt hearing to contest the validity of PDS' lien as to it.

Section 49-51 provides that any person having an interest in real or personal property described in a certificate of lien, "which lien is invalid but not discharged of record," may make written request to the lienor to discharge the lien. If the lien is not discharged within thirty days, the party having the interest may apply to the Superior Court to adjudge "the validity or invalidity of the lien" and to award damages for the failure of the lienor to discharge the lien.

United Bank argues that it could not invoke this statute to obtain a hearing to contest PDS' lien because the statute is intended to permit a party to demonstrate technical insufficiencies or jurisdictional failings that render the mechanic's lien wholly invalid, thereby entitling the party to damages for the lien not being released. The very few cases arising under the statute do involve such attacks upon a lien. In *Weinburg* v. *Valente,* 79 Conn. 247, 64 A. 337 (1906), the lien was declared invalid because it had been legally waived. In *Garofalo* v. *Permacrete Corporation,* 15 Conn. Sup. 358 (1948), the subcontractor's lien was declared invalid because the general contractor had been fully paid by the property owner; in *Forge Square Associates Ltd. Partnership* v. *P & M Mason Contractors, Inc.,* Supe-

rior Court, judicial district of Middlesex (February 2, 1990, 5 C.T.L.R. 146) (*Higgins, J.*), the lien was declared invalid because the action to foreclose the lien was not brought within one year of the filing of the lien certificate, as required by § 49-39.

The wording of § 49-51 to the effect that a court "may adjudge the validity or invalidity of the lien" justifies the same interpretation as of similar language in § 49-37, namely that the lien may be declared invalid in its entirety or invalid in its application to a party having an interest in the property. In fact, in the present case United Bank asserted the PDS lien, did not have priority over the bank mortgage because the nature of the work performed by PDS before the recording of the mortgage did not constitute "commencement of the services" within the meaning of § 49-33. This court concludes that such an attack on PDS' lien could have been made by United Bank under § 49-51, thus giving it the opportunity for a prompt hearing in compliance with due process requirements.

In *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* supra, 375–76, our Supreme Court alluded to § 49-51 but did not discuss it in reaching its decision that the mechanic's lien statutory scheme did not provide a property owner with the right to be heard at a meaningful time and in a meaningful manner. *Roundhouse* is a serious challenge to this court's conclusion as to the application of § 49-51 to the present case. This court is emboldened to make it by the silence of the Supreme Court on the applicability of that statute, and by the plain wording of the statute that a hearing under it can determine "the validity or invalidity of the lien."

United Bank argues that the Connecticut mechanic's lien law does not satisfy due process standards as to it because the statute does not require that notice of

the filing of the mechanic's lien certificates be given to persons, other than the owner, affected by the lien. See General Statutes § 49-34. In support of this assertion, United Bank cites *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950), to the effect that if the fundamental requisite of due process of law is the right to be heard, "[t]his right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." See also *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* supra, 376.

In the present case, while no evidence indicated United Bank was directly notified of the filing of PDS' mechanic's lien, there was ample evidence that PDS did sufficient visible work on the subject property before the recording of United Bank's mortgage so as to give United Bank constructive notice of the lien. The law is succinctly stated in *Lenexa State Bank & Trust Co.* v. *Dixon,* 221 Kan. 238, 241–42, 559 P.2d 776 (1977). "[A] mechanic's lien attaches when the work first commences . . . and the work itself puts those who later deal with the property on notice of its existence." Id.

Moreover, the notice requirement is related to the right to a hearing at a meaningful time. In contrast to a property owner, whose prior mortgage may be accelerated, or whose credit rating may be adversely affected by the filing of an encumbrance on his property, the impact of the filing of the PDS mechanic's lien on United Bank is the more limited one of possibly affecting the assignment of its mortgage as a first lien on the property. When a title search reveals such a restriction on United Bank assigning its mortgage, that would be a meaningful time for United Bank to demand a prompt hearing under § 49-37 or § 49-51 to assert the priority of its mortgage over the lien.

After *Roundhouse* the legislature amended the mechanic's lien law to require that the lienor serve a copy of its certificate of lien on the property owner. General Statutes § 49-34. For a good reason, it did not require a copy to be served on other lienors. Mechanic's liens are a means of securing payment to workers and suppliers who contribute services and material to improve property, which services and materials cannot be reclaimed once a part of the realty. *Connecticut* v. *Doehr,* supra, 28 (Rehnquist, C. J., and Blackmun, J., concurring). That protection is meant to be readily available and simply obtained. To require that a mechanic's lienor notify all other lienors of the filing of its certificate would necessitate a title search, the hiring of an attorney, and thus vitiate the efficacy of the mechanic's lien law.

In *Connecticut* v. *Doehr,* supra, 12 n.4, the court, after noting the preexisting interest a mechanic's lienor has in the property to which the services add value, stated "a heightened plaintiff interest in certain circumstances can provide a ground for upholding procedures that are otherwise suspect."

In the present case, given that: (1) United Bank had constructive notice of PDS' lien; (2) the impact of the filing of the PDS lien certificate on United Bank was relatively small (even if not de minimus); (3) if the certificate prevented United Bank from assigning its mortgage, it could promptly obtain a hearing under §§ 49-37 and 49-51; and (4) requiring that United Bank be served with the lien certificate would diminish the utility of the mechanic's lien protection, this court concludes that failing to serve United Bank with notice of the certificate filing does not constitute a denial of due process.

United Bank asserts that *Doehr* demands that PDS must prove at a hearing in probable cause that its mechanic's lien is meritorious *before* the PDS lien can

attach. While *Doehr* does require a predeprivation hearing when the plaintiff seeks an attachment of the defendant's property to secure a possible judgment in a tort claim, no cases brought to the attention of this court have required a hearing on a mechanic's lien prior to it becoming effective. The observation of the *Doehr* court that the substantial interest of the mechanic's lienor in the property subject to the lien justifies less stringent due process requirements invites the inference that a hearing prior to filing is not constitutionally mandated.

On reconsideration, this court concludes that the Connecticut mechanic's lien law, particularly §§ 49-37 and 49-51, accords United Bank its due process right to a hearing to contest PDS' lien under the fourteenth amendment to the United States constitution and article first, § 10, of the Connecticut constitution. Accordingly, the PDS lien is determined to have priority over the United Bank mortgage.

When this court filed its earlier memorandum of decision, it failed to take into account that the parties had stated that they wanted to leave open the matter of the plaintiff's attorney's fees. At the motion for reconsideration, it reminded the court that it had been mistaken in fixing those fees. Since then the parties have agreed that PDS may be awarded counsel fees in the amount of $58,000.

Based on the foregoing, a judgment of strict foreclosure may enter in favor of PDS; its debt is fixed at $253,872, plus interest accruing from January 24, 1991 to date. PDS is awarded attorney's fees of $58,000 and an appraisal fee of $4800. The law day is set for June 1, 1992, for Double RS, the owner of the equity of redemption and subsequent days for subsequent encumbrancers in inverse order of their priority. The order of priorities of encumbrances on the property is as fol-

lows: (1) PDS Engineering and Construction, Inc.; (2) United Bank and Trust Company, also known as Fleet Bank; (3) Eastern Sewer Pipe Corporation, doing business as EPPCO; (4) G R Valley, Inc.; and (5) and Ronald Guimond, doing business as Guimond Wallpaper and Paint.