**GARRISON MEMORIAL HOSPITAL, a North Dakota nonprofit corporation, Petitioner,**

v.

**Anthony RAYER, M.D., Respondent.**

Civ. No. 890286.

Supreme Court of North Dakota.

March 27, 1990.

Lawrence R. Klemin, P.C. (argued), Bismarck, for petitioner.

Ackre & Baer Chartered, Cando, and Rosenberg Law Firm, Bismarck, for respondent; argued by Larry M. Baer.

Kent M. Morrow (argued), Asst. Atty. Gen., Bismarck, for intervenor State of N.D.

ERICKSTAD, Chief Justice.

■ Garrison Memorial Hospital (the Hospital) appealed an order holding that the North Dakota attachment statute is unconstitutional and dissolving a writ of attachment. We ordered that the appeal be treated as a petition for exercise of our supervisory jurisdiction. We conclude that Chapter 32–08.1, N.D.C.C., is unconstitutional and deny a supervisory writ.

On October 28, 1987, Dr. Anthony L. Rayer entered into a 5–year Community Service Agreement with the Hospital. The Hospital agreed to make certain financial commitments, payments and guarantees in order to assist Rayer in establishing a medical practice in Garrison. Commencing with the second year of the agreement, Rayer agreed to pay for, or reimburse the Hospital for, certain expenses.

On June 9, 1989, the Hospital sued Rayer for failing to pay or reimburse the Hospital for "clinic space, services and supplies as agreed beginning November 1, 1988." Shortly after service of the summons and complaint, Rayer executed a letter stating

that he was resigning his position and that he anticipated having his "personal medical equipment and office supplies ... out of the hospital by 11 PM on Friday June 16, 1989." On June 14, a letter demanding security for Rayer's debt to the Hospital was served on Rayer.

On June 16, 1989, the Hospital amended its complaint and submitted to the district court an application for a writ of attachment accompanied by a $500 bond and an affidavit asserting that Rayer owed the Hospital $420,588.66 and that:

"6. This affiant knows or has good reason to believe that Anthony Rayer, M.D., is about to remove his residence from McLean County, where he presently resides, with the intention of permanently changing the same. The Defendant is either moving to another county in North Dakota, is returning to the State of Minnesota where he formerly resided, or is moving to some other state. The Defendant fails or neglects on demand to give security for the debt upon which the action is commenced."[1]

Without notice to Rayer, the district court[2] issued a writ of attachment on June 16, commanding the McLean County Sheriff to "seize and attach all of the property ... of the Defendant, Anthony Rayer, M.D., that may be located within McLean County, North Dakota, or so much thereof as may be sufficient to satisfy the Plaintiff's demand in the amount of $420,588.66." The sheriff immediately seized Rayer's property, including a bank account.

Rayer answered the amended complaint on June 28, 1989. On August 10, Rayer moved that the writ of attachment be dissolved. In ordering that the writ of attachment be dissolved, the district court[3] ruled:

"I am of the opinion that Ch. 32–08.1, as applied to this case, does not pass constitutional muster because

"(1) An allegation that a debtor is about to remove himself from the county (as distinguished from the state), without

more, is not a sufficiently compelling reason to justify constitutionally the drastic remedy of ex parte prejudgment attachment of all the alleged debtor's assets.

"(2) Procedural due process requires that the alleged debtor be notified by the creditor that his right to immediate hearing will be lost if not demanded within the time specified by law, and that his right to claim exemptions from process will likewise be lost if not exercised."

The Hospital appealed. We ordered that the appeal be treated as a petition for exercise of our supervisory jurisdiction. We also granted the Attorney General's motion to intervene on behalf of the State of North Dakota.

The Hospital and the State contend that the provisions of our attachment statute, Ch. 32–08.1, N.D.C.C., are constitutional in all respects. Rayer contends, among other things:

"North Dakota *Ex Parte* Prejudgment Attachment Under § 32–08.1–03(1)(i), N.D.C.C., does not Comport to Constitutionally Mandated Procedural Due Process

"A. North Dakota law does not require proof of exigent circumstances necessitating extraordinary action to protect creditor proprietary interest

"B. The Role of the Judiciary as assigned by our statute is too limited to comport to procedural due process

"C. Opportunity for hearing is not immediate or prompt

"D. The hearing afforded is not a 'full hearing'

"E. Post–Seizure review under Section 32–08.1–16, N.D.C.C., is too limited in scope."

"Prejudgment seizure of a defendant's property before there has been a determination of the underlying claim and before the defendant has had an opportunity to be heard on the merits of the underlying claim, is a drastic remedy the granting of

---

**1.** Rayer moved to Cando, North Dakota.

**2.** The Honorable Dennis A. Schneider, District Judge.

**3.** The Honorable Gerald G. Glaser, District Judge.

which demands the utmost caution and sensitivity." *Production Credit Ass'n v. Halverson*, 386 N.W.2d 905, 910 (N.D.1986). We must examine the validity of the *ex parte* prejudgment attachment procedures afforded by Chapter 32–08.1, N.D.C.C., in light of four decisions by the United States Supreme Court: *Sniadach v. Family Finance Corp.* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); and *North Georgia Finishing, Inc. v. Di–Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).

In *Sniadach*, the Supreme Court held that Wisconsin's wage garnishment procedures, under which the clerk of court issued a summons at the request of a creditor's lawyer, thereby freezing a wage earner's wages without an opportunity to be heard, violated due process. The Court observed that "[s]uch summary procedure may well meet the requirements of due process in extraordinary situations," but found that the case presented "no situation requiring special protection to a state or creditor interest," that the statute was not "narrowly drawn to meet any such unusual condition," and that *"in personam* jurisdiction was readily obtainable." 395 U.S. at 339, 89 S.Ct. at 1821.

In *Fuentes*, the Supreme Court struck down Florida and Pennsylvania *ex parte* prejudgment replevin statutes which did not "limit the summary seizure of goods to special situations demanding prompt action" and under which "no state official reviews the basis for the claim to repossession; and no state official evaluates the need for immediate seizure." 407 U.S. at 93, 92 S.Ct. at 2001. The Court noted that "[t]here are 'extraordinary situations' that justify postponing notice and opportunity for a hearing" but that such situations "must be truly unusual" (407 U.S. at 90, 92 S.Ct. at 1999) and that "[t]here may be cases in which a creditor could make a showing of immediate danger that a debtor will destroy or conceal disputed goods." 407 U.S. at 93, 92 S.Ct. at 2001. The Court held, 407 U.S. at 96–97, 92 S.Ct. at 2002–03:

"We hold that the Florida and Pennsylvania prejudgment replevin provisions work a deprivation of property without due process of law insofar as they deny the right to a prior opportunity to be heard before chattels are taken from their possessor.... We do not question the power of a State to seize goods before a final judgment in order to protect the security interests of creditors so long as those creditors have tested their claim to the goods through the process of a fair prior hearing.... Since the essential reason for the requirement of a prior hearing is to prevent unfair and mistaken deprivations of property, however, it is axiomatic that the hearing must provide a real test. '[D]ue process is afforded only by the kinds of "notice" and "hearing" that are aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor *before* he can be deprived of his property....' *Sniadach v. Family Finance Corp., supra*, 395 U.S. at 343, 89 S.Ct. at 1823 (Harlan, J., concurring)."

In *Mitchell v. W.T. Grant Co.*, Grant alleged that it sold household goods to Mitchell, that it had an unpaid balance, that it had a vendor's lien, and requested sequestration of the goods. The accompanying affidavit "asserted that Grant had reason to believe [Mitchell] would 'encumber, alienate or otherwise dispose of the merchandise ... during the pendency of these proceedings.'" 416 U.S. at 602, 94 S.Ct. at 1897. Under Louisiana law, a vendor's lien expired if the buyer transferred possession. The Supreme Court held that Louisiana's statutory *ex parte* prejudgment sequestration procedure "effects a constitutional accommodation of the conflicting interests of the parties." 416 U.S. at 607, 94 S.Ct. at 1900.

Under the statutory procedure upheld in *Mitchell*, (1) a writ of sequestration "will not issue on the conclusory allegation of ownership or possessory rights" [416 U.S. at 605, 94 S.Ct. at 1899]; (2) a writ "shall issue 'only when the nature of the claim and the amount thereof, if any, and the

grounds relied upon for the issuance of the writ clearly appear from specific facts' shown by verified petition or affidavit" [416 U.S. at 605, 94 S.Ct. at 1899]; (3) "the clear showing required must be made to a judge"[4] [416 U.S. at 606, 94 S.Ct. at 1899]; (4) a debtor was entitled "immediately to seek dissolution of the writ, which must be ordered unless the creditor 'proves the grounds upon which the writ was issued,' ... the existence of the debt, lien, and delinquency" [416 U.S. at 606, 94 S.Ct. at 1899]; and (5) there was "judicial control of the process from beginning to end. This control is one of the measures adopted by the State to minimize the risk that the *ex parte* procedure will lead to a wrongful taking." 416 U.S. at 616–617, 94 S.Ct. at 1904–05.

Relying on *Fuentes*, the Supreme Court distinguished *Mitchell* and struck down Georgia's property garnishment statute in *North Georgia Finishing, Inc.* The Court said of the Georgia procedure, 419 U.S. at 607, 95 S.Ct. at 722:

"The Georgia garnishment statute has none of the saving characteristics of the Louisiana statute. The writ of garnishment is issuable on the affidavit of the creditor or his attorney ... [which] need contain only conclusory allegations. The writ is issuable ... by the court clerk, without participation by a judge.... There is no provision for an early hearing at which the creditor would be required to demonstrate at least probable cause for the garnishment."

In *Guzman v. Western State Bank*, 516 F.2d 125, 133 (8th Cir.1975), the United States Court of Appeals held that North Dakota's former attachment statute denied debtors due process of law for the following reasons, among others:

"1. Lack of a requirement that the affidavit supporting the request for the warrant of attachment alleged the need for summary procedure in order to avoid removal, destruction, or concealment of

the property or loss of the creditor's proprietary interests therein;

"2. Lack of adequate judicial supervision by requiring issuance of the warrant of attachment by the judge of the court instead of the clerk."

■■■ From the foregoing decisions, we conclude that a debtor must ordinarily be afforded a hearing before his property may be seized at the instance of a creditor pending the outcome of a trial on the creditor's claim. However, "extraordinary situations ... requiring special protection to a state or creditor interest" (*Sniadach*, 395 U.S. at 339, 89 S.Ct. at 1821), which "must be truly unusual" (*Fuentes*, 407 U.S. at 90, 92 S.Ct. at 1999) may "justify postponing notice and opportunity for a hearing" (*id.*), such as cases in which a summary procedure is necessary "in order to avoid removal, distribution, or concealment of the property or loss of the creditor's proprietary interests therein" (*Guzman*, 516 F.2d at 133). In such cases, an *ex parte* prejudgment attachment procedure may be valid if the creditor must make a showing of the "nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ" (*Mitchell*, 416 U.S. at 605, 94 S.Ct. at 1899) "to a judge" (*id.*, 416 U.S. at 606, 94 S.Ct. at 1899) "exercising judicial discretion whenever necessary, [to] aid in minimizing the likelihood of an improvident issuance of a writ" (*Guzman*, 516 F.2d at 131). The debtor in such cases must also be entitled to a prompt "full hearing on the matter of possession following the execution of the writ, thus cutting to a bare minimum the time of creditor-or court-supervised possession" (*Mitchell*, 416 U.S. at 610, 94 S.Ct. at 1901), upon which dissolution of the writ "must be ordered unless the creditor 'proves the grounds upon which the writ was issued,' ... the existence of the debt, lien, and delinquency" (*Mitchell*, 416 U.S. at 606, 94 S.Ct. at 1899), or "at which the creditor would be required to demonstrate at least probable cause" (*North Georgia Finishing, Inc.,*

---

**4.** Judicial authority was required in Orleans Parish where this case arose. The court noted in Footnote 5 that "[t]he validity of procedures

obtaining in areas outside Orleans Parish is not at issue." 416 U.S. at 606.

419 U.S. at 607, 95 S.Ct. at 722) for the attachment.

Section 32–08.1–02, N.D.C.C., provides:

"The writ of attachment shall be issued on the request of the plaintiff at any time before final judgment and after a summons and a complaint is filed.... It shall be in the name of the court and be sealed with its seal and signed by its judge."

Section 32–08.1–03(1)(i), N.D.C.C., provides:

"1. Before any writ of attachment shall be executed, the plaintiff or someone on his behalf shall make and attach thereto an affidavit stating that the defendant is indebted to the plaintiff in a sum exceeding fifty dollars ... and that the affiant knows or has good reason to believe any of the following:

\* \* \* \* \* \*

"i. The defendant is about to remove his residence from the county where he resides with the intention of permanently changing the same, and fails or neglects on demand to give security for the debt upon which the action is commenced."

Section 32–08.1–05, N.D.C.C., requires the plaintiff to deliver a $500 bond.

Read together, §§ 32–08.1–02, 32–08.1–03(1)(i), and 32–08.1–05, provide that a writ of attachment shall be issued at the request of the plaintiff if the request is merely accompanied by a $500 bond and an affidavit stating that the defendant is indebted to the plaintiff for more than $50 and the affiant knows or has good reason to believe that the defendant is about to move from the county where he resides without giving security for the debt. There are several infirmities in this statutory scheme. Under these statutes, conclusory allegations of a debt of more than $50 and that the defendant is about to move from the county where he resides without giving security for the debt are sufficient to secure a writ of attachment. The statutes do not require the plaintiff to make a showing of the nature and amount of the claim or demonstrate probable cause to a judge exercising judicial discretion whenev-

er necessary to minimize the likelihood of improvident issuance of a writ. Nor do the statutes require the plaintiff to show that there is any reason why a summary issuance of a writ of attachment is necessary "to avoid removal, destruction, or concealment of the property or loss of the [plaintiff's] proprietary interests therein" (*Guzman*, 516 F.2d at 133) or that there are any other "extraordinary situations ... requiring special protection to a state or creditor interest" (*Sniadach*, 395 U.S. at 339, 89 S.Ct. at 1821). The judge's only duty with respect to the issuance of a writ is to sign it. Only after a writ has been issued is a judge afforded any opportunity for the exercise of judicial discretion, for such things as adjusting the amount of the plaintiff's bond, vacating, or modifying the writ.

Section 32–08.1–16, N.D.C.C., provides that "[t]he court may, at any time before the trial of the action or a release of the property under section 32–08.1–15, vacate or modify the writ of attachment for irregularity or other sufficient cause, upon five days' notice of motion." Section 32–08.1–17, N.D.C.C., provides in part:

"Within ten days after notice of the issuing of a writ of attachment against his property, the defendant may, by special answer, deny the existence, at the time of the making of the attachment affidavit, of the material facts stated therein except the alleged liability and the amount thereof, and may assert undue hardship as a defense. The issue so raised shall be tried by the court, before the trial of the action and the affirmative shall be upon the plaintiff."

Although a defendant may seek a hearing after an *ex parte* prejudgment writ of attachment has been issued, there is no statute entitling a defendant to an immediate or prompt full hearing after issuance of the writ at which the plaintiff will be required to prove an underlying debt or its amount or even probable cause. Section 32–08.1–17 precludes a defendant from even denying the existence, in his special answer, of "the alleged liability and the amount thereof." Thus, in a case in which a writ of attachment has been issued on the basis of

§ 32–08.1–03(1)(i), a defendant can only deny that he is moving from the county where he resides without giving security for the alleged debt and the plaintiff need only show that he is.

■ In addition, it is clear to us that, without more, Rayer's move to another county without giving security for the alleged debt is an insufficient reason for the *ex parte* issuance of a prejudgment writ of attachment. The fact that a defendant is about to move to another county without giving security for an alleged debt, without more, is not among the "truly unusual" (*Fuentes,* 407 U.S. at 90, 92 S.Ct. at 1999), "extraordinary situations ... requiring special protection to a state or creditor interest" (*Sniadach,* 395 U.S. at 339, 89 S.Ct. at 1821).

■ We conclude that the *ex parte* issuance of a writ of attachment on Rayer's property under the circumstances of this case in accordance with the provisions of Ch. 32–08.1, N.D.C.C., constituted a denial of due process of law,[5] as explained in *Sniadach, Fuentes, Mitchell, North Georgia Finishing, Inc.,* and *Guzman.*[6] We, therefore, deny a supervisory writ which would direct the district court to vacate its order which held our attachment statute unconstitutional and which dissolved the writ of attachment. We encourage the parties to cooperatively seek an early determination of the underlying claims on their merits.

VANDE WALLE, LEVINE and MESCHKE, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of GIERKE, J., disqualified.

---

5. Having so decided, we need not determine if Judge Glaser correctly determined that procedural due process requires that a creditor notify an alleged debtor that his right to an immediate hearing will be lost if not timely demanded and that his right to claim exemptions from process will likewise be lost if not exercised.

6. The parties have not raised any issues about the validity of our attachment statutes under the North Dakota Constitution. We, therefore, do not attempt to determine any state constitutional issues.