703 N.W.2d 285 (2005)
2005 ND 146
CYBRCOLLECT, INC., Appellee and Cross-Appellant
v.
NORTH DAKOTA DEPARTMENT OF FINANCIAL INSTITUTIONS and Timothy J. Karsky, Commissioner of the North Dakota Department of Financial Institutions, Appellants and Cross-Appellees.
No. 20040214.
Supreme Court of North Dakota.
July 27, 2005.
*287 Scott A. Miller, Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for Appellants and Cross-Appellees.
Ronald H. McLean (argued) and Timothy G. Richard, Serkland Law Firm, Fargo, N.D., for Appellee and Cross-Appellant.
Marilyn K. Foss, Bismarck, N.D., amicus curiae for the National Automated Clearing House Association.
MARING, Justice.
[¶ 1] The North Dakota Department of Financial Institutions ("DFI") appeals and CybrCollect, Inc., ("CybrCollect") cross appeals a district court amended judgment reversing the DFI's order directing CybrCollect to cease its electronic collection of N.D.C.C. § 6-08-16(2) fees for checks that have been returned for insufficient funds ("NSF") without the debtor's signed authorization. We affirm the amended judgment of the district court reversing the order of the DFI.

I
[¶ 2] The DFI is authorized to regulate debt collection agencies under N.D.C.C. ch. 13-05. CybrCollect, a Wisconsin corporation, has been a licensed debt collection agency in North Dakota since April 2003. The DFI, in an administrative decision that rejected the recommendations of an administrative law judge ("ALJ"), determined that the electronic collection of NSF fees, without a check writer's signed authorization, violates N.D.C.C. ch. 13-05.
[¶ 3] CybrCollect contracts with North Dakota merchants to electronically collect checks that have been returned for insufficient funds. A person issuing a check without sufficient funds is liable for collection fees or costs in an amount not to exceed $25. N.D.C.C. § 6-08-16(2). The $25 collection fee is recoverable by the holder of the check, its agent, or representative. Id. On behalf of the merchant, CybrCollect collects the amount of the NSF check, as well as the $25 statutory *288 fee. CybrCollect's standard merchant contract requires the merchant to post a sign that states:
Check Policy
In the unlikely event that your check is returned for Insufficient or Held Funds, we will debit your checking account electronically for the face amount of the check PLUS the fee listed below.... The transaction will appear on your bank statement and no one will have to contact you about payment.

$25.00
[¶ 4] When CybrCollect receives an NSF check from the contracting merchant's bank, it scans the check into its computer system. The system converts the information into electronic data in the form of two debits: one for the face value of the check, and another for the amount of the merchant's collection fee. When sufficient funds become available in the check writer's account, the two electronic records are transmitted to the check writer's bank through the Automated Clearing House ("ACH"), and the check writer's account is debited for both amounts. If re-presentment is attempted twice and there are still insufficient funds in a check writer's account, CybrCollect sends the check to a traditional collection agency for collection.
[¶ 5] CybrCollect uses the ACH, a nationwide electronic funds transfer system, as a means to electronically debit an NSF check writer's checking account for both the face value of the NSF check and the NSF collection fee. The ACH is operated in accordance with the National Automated Clearing House Association ("NACHA") rules. 2005 Electronic Payments Review and Buyer's Guide, Understanding the ACH Network: An ACH Primer at 1.
[¶ 6] The NACHA rules constitute an agreement between all ACH participants as to how ACH transactions will be conducted, enabling participants to exchange debit and credit payments on common, agreed-to terms. NACHA 2003 Operating Rules, Article One, § 1.1. In a typical ACH transaction, five participants are involved: (1) an originating company or individual ("originator"); (2) a receiving company or individual ("receiver"); (3) an originating depository financial institution ("ODFI"); (4) a receiving depository financial institution ("RDFI"); and, (5) an ACH operator. 2005 Electronic Payments Review and Buyer's Guide, Understanding the ACH Network: An ACH Primer at 1. The originator, generally a company directing a transfer of funds to or from a check writer's account, initiates an ACH debit or credit payment based on a transaction with a receiver. Id. The receiver is typically a company, employee, or consumer that authorizes an originator to initiate an ACH debit or credit payment to or from the receiver's account with an RDFI. Id. at 2. An ODFI is a depository financial institution, bank, savings association, or credit union that acts on behalf of an originator and forwards payment to an ACH operator for clearing. Id. at 1. An RDFI is a depository financial institution, bank, savings association or credit union that receives an ACH debit or credit payment from an ACH operator and posts the debit or credit payment to the receiver account, i.e., the RDFI's depositor. Id. at 2. An ACH operator is a central clearing facility operated by a private organization or Federal Reserve Bank from which participating financial institutions transmit or receive ACH payments. Id.
[¶ 7] NACHA rules require that the receiver authorize the originator to initiate a credit or debit payment to or from a receiver's account. NACHA 2003 Operating Rules, Article Two, § 2.1.2. In order for an originator to initiate a re-presentment *289 payment to a receiver's account, the receiver must authorize payment. See id., Article Two, §§ 2.1.2, 2.8.1. Re-presentment payments may only be initiated for the amount indicated on the NSF check. Id., Article Two, § 2.8.3.6. Therefore, the NSF fee must consist of a separate debit to the check writer's account and requires a check writer's authorization that is "signed or similarly authenticated by the consumer." Id., Article Two, § 2.1.2.
[¶ 8] The DFI, contending NACHA rules are incorporated into North Dakota law, concluded CybrCollect's electronic collection of NSF check fees, without written authorization from the check writer, violated NACHA rules, and consequently, violated North Dakota law. On March 7, 2003, the DFI issued a Cease and Desist Order against CybrCollect. The Order, in pertinent part, stated:
WHEREAS, it appears to the Commissioner CybrCollect, Inc., is engaging, has engaged, or is about to engage in acts and practices which may constitute violation of the North Dakota Collection Agency Act (N.D.C.C. ch. 13-05).
....
NOW THEREFORE, IT IS HEREBY ORDERED that CybrCollect, Inc., its directors, officers, employees, agents, and successors; cease and desist from engaging in further acts and practices in violation of N.D.C.C. ch. 13-05.
On March 21, 2003, CybrCollect served a Request for Hearing on the DFI. The DFI requested an ALJ conduct a hearing. In late April 2003, CybrCollect signed an agreement with the DFI and was issued a collection agency license, authorizing the corporation to engage in collection activity within North Dakota. The agreement specifically noted CybrCollect "may only collect collection fees electronically if it verifies that the debtor has signed a separate authorization allowing the electronic debit of the debtor's account for those fees." The agreement further stated, "[t]he restriction on the electronic collection of fees shall remain in force permanently unless the Department of Financial Institutions, the Burleigh County District Court or the North Dakota Supreme Court issues a final determination that allows CYBRCOLLECT, Inc., to collect those fees electronically without a separate signed authorization."
[¶ 9] The ALJ held a hearing on May 12, 2003. The issues specified were: "Whether CybrCollect has engaged in acts, practices, or transactions in violation of N.D.C.C. ch. 13-05 such that the Commissioner may impose a cease and desist order against CybrCollect under the provisions of N.D.C.C. ch. 13-05, and whether such acts, practices, or transactions require further relief beyond the imposition of a cease and desist order." The ALJ's recommended Findings of Fact, Conclusions of Law, and Order, dated June 24, 2003, found:
There is simply nothing stated in North Dakota law or policy that would allow DFI to prohibit CybrCollect from interpreting the law in a reasonable fashion, as it has, based on Federal Reserve Board interpretation, to do what it currently does in its business activities. It is not against North Dakota law to do so, and the DFI is, at this time, powerless to prevent it, notwithstanding any powers or duties pursuant to agreements any other entities may have in regard to the business practices of CybrCollect, and notwithstanding any risks to North Dakota consumers or the potential for fraud occurring with regard to North Dakota consumers. There has to date been no allegation of specific fraud or allegation of violation of specific statute or rule by DFI against CybrCollect.

*290 If one of the interpretations of the law offered by the parties in this matter is to be authoritative in North Dakota, it is up to DFI to adopt a rule or for the North Dakota Legislative Assembly to pass a statute to deal with this situation of consumer risk and risk for financial institutions, if indeed there is a risk.
[¶ 10] In a letter dated July 29, 2003, the DFI commissioner requested that CybrCollect brief two additional issues related to the Fair Debt Collection Practices Act ("FDCPA"): (1) whether CybrCollect's contact with the check writer's financial institution inquiring whether sufficient funds were available to re-present the NSF check is a "communication with third parties," which is prohibited by 15 U.S.C. § 1692c(b); and, (2) whether CybrCollect's debiting of a check writer's account is a communication with the check writer that necessitates CybrCollect's sending of a written notice to the check writer under 15 U.S.C. § 1692g(a). CybrCollect objected, claiming that those issues were new legal theories that could not be raised after the ALJ hearing and decision. CybrCollect then requested a DFI hearing. The DFI granted the request and a hearing was held on September 29, 2003.
[¶ 11] In November 2003, the DFI issued its Order, rejecting the recommended Order by the ALJ and affirming the DFI's earlier Cease and Desist Order. The DFI ordered CybrCollect to "cease and desist from engaging in further acts, practices, and transactions in violation of N.D.C.C. chapter 13-05, specifically including, but not limited to, the electronic collection of N.D.C.C. § 6-08-16(2) collection fees without the debtor's signed authorization." Specifically, the Order concluded:
3. CybrCollect does not have the authority to collect NSF fees pursuant to N.D.C.C. § 6-08-16 without the check writer's signed authorization for the following reasons:
a. State law does not allow CybrCollect to unilaterally debit a check-writer's account without notice and an opportunity for hearing. CybrCollect's actions in debiting a check writer's account for the NSF fees without the appropriate authority is a "fraudulent, deceptive, or misleading representation or means to collect or attempt to collect claims," which is a violation of N.D.A.C. § 13-04-02-08.
b. CybrCollect contractually agreed in two separate contracts to follow the NACHA Operating Rules. CybrCollect's intentional and knowing violation of those agreements is "conduct which will bring reproach upon the industry or the commissioner of financial institutions" and is, therefore, a violation of N.D.A.C. § 13-04-03-01. The fines to which CybrCollect would be subject due to its repeated violation of the NACHA Operating Rules would place CybrCollect in a position that would violate N.D.A.C. § 13-04-03-10. CybrCollect's agreement to comply with the NACHA rules while never intending to so comply is a "fraudulent, deceptive, or misleading representation or means to collect or attempt to collect claims," which is a violation of N.D.A.C. § 13-04-02-08.
c. NACHA Operating Rules have been incorporated into state law. Since the NACHA Operating Rules have been incorporated into state law, CybrCollect's actions in submitting electronic debit entries without the check writers' signed authorizations violates state law.
CybrCollect's actions in debiting a check writer's account for the NSF fees without the appropriate authority is a "fraudulent, deceptive, or misleading *291 representation or means to collect or attempt to collect claims," which is a violation of N.D.A.C. § 13-04-02-08. CybrCollect must obtain the check-writer's written permission prior to removing the NSF fee from the check-writer's account.
4. CybrCollect is a "debt collector" under the FDCPA. CybrCollect's actions in calling the check-writers' banks to verify funds and in submitting electronic debit entries to the ACH network and debtors' banks without a customer's prior consent is a "communication with third parties" which is prohibited under 15 U.S.C. § 1692c(b). CybrCollect's signage is insufficient to establish consumer consent. CybrCollect's violation of 15 U.S.C. § 1692c(b) is a violation of N.D.A.C. § 13-04-02-04(6). CybrCollect can neither call a check-writer's bank nor submit electronic debit entries to the ACH network without a consumer's prior consent. However, that consent does not need to be in writing under the FDCPA.
[¶ 12] CybrCollect appealed the DFI decision to the district court. The district court issued an amended judgment reversing the DFI's order and awarding attorney's fees and costs to CybrCollect. The DFI appeals, arguing CybrCollect's debiting of a check writer's account for NSF fees without the appropriate authority violates N.D.C.C. ch. 13-05 in at least four ways. First, CybrCollect is violating N.D. Admin. Code § 13-04-02-08, which prohibits "fraudulent, deceptive, or misleading representation or means to collect or attempt to collect claims" because N.D.C.C. § 6-08-16 does not explicitly provide for electronic collection of NSF fees without the check writer's signed authorization. Second, CybrCollect's collection practice violates the NACHA Operating Rules. CybrCollect contractually agreed in two separate contracts to abide by the NACHA rules; therefore, its knowing violation of the agreements violates N.D. Admin. Code § 13-04-03-01 because it is "conduct which will bring reproach upon the industry or the commissioner of financial institutions" and violates N.D. Admin. Code § 13-04-02-08 because it is a deceptive means to collect a claim. Third, because NACHA Operating Rules have been incorporated into North Dakota law, violation of NACHA rules violates state law. Fourth, CybrCollect is violating the Federal Fair Debt Collection Practices Act, and consequently, N.D. Admin. Code § 13-04-02-04(6), which states debt collectors may not "[v]iolate sections 804 through 810 of the Federal Fair Debt Collection Practices Act." The DFI further argues that the district court erred in awarding attorney's fees to CybrCollect because the DFI's actions were substantially justified.
[¶ 13] On cross appeal, CybrCollect argues it was denied due process by the DFI because the DFI did not follow the proper procedures for an administrative hearing under N.D.C.C. ch. 28-32 or provide a fair hearing. CybrCollect further contends the district court erred when it limited CybrCollect's attorney's fees to only its North Dakota counsel.

III
[¶ 14] Administrative agency decisions are subject to limited judicial review. Huff v. North Dakota State Bd. of Medical Examiners, 2004 ND 225, ¶ 8, 690 N.W.2d 221. Under N.D.C.C. §§ 28-32-46 and 28-32-49, the district court, and this Court on further appeal, must affirm an administrative agency decision unless one of the following is present:
1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.

*292 3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.
Id.
[¶ 15] When reviewing an administrative agency decision, we do not substitute our judgment for that of the agency or make independent findings. Id. We determine only if a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence in the entire record, deferring to the hearing officer's opportunity to judge the credibility of witnesses. Id. An agency's decision on questions of law are fully reviewable. Id.

IV
[¶ 16] The DFI appeals, arguing CybrCollect's debiting of a check writer's account for NSF fees without the check writer's signed authorization violates N.D.C.C. ch. 13-05.
[¶ 17] Section 13-05-06, N.D.C.C., provides:
Insofar as consistent with other provisions of law, the department of financial institutions has the power to:
. . . .
4. Adopt any and all rules and regulations necessary to carry out the purpose of this chapter.
5. Issue and serve upon any person or licensed collection agency an order to cease and desist to take corrective action when the department has reason to believe the person or agency is violating, has violated, or is about to violate the provisions of this chapter. An interested party may appeal issuance of a cease and desist order under the provisions of chapter 28-32 by filing written notice of appeal within twenty days after service of the order.
N.D.C.C. § 13-05-06.
[¶ 18] The chapter further provides:
1. The department of financial institutions may:
a. Make such public or private investigation within or outside this state as it deems necessary to determine whether a person has violated or is about to violate a provision of this chapter or a rule or order under this chapter, or to aid in the enforcement of this chapter or in the adopting of rules and forms under this chapter.
b. Require or permit a person to file a statement in writing, under oath or otherwise as the department determines, as to all the facts and circumstances concerning the matter to be investigated.
c. Publish information concerning a violation of this chapter or a rule or order under this chapter.

*293 2. For the purpose of an investigation or proceeding under this chapter, the department of financial institutions may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of books, papers, correspondence, memoranda, agreements, or other documents or records which the department deems relevant or material to the inquiry.
N.D.C.C. § 13-05-06.2.

A. Violation of N.D. Admin. Code § 13-04-02-08
[¶ 19] Section 13-04-02-08, N.D. Admin. Code, prohibits a debt collector from using "any fraudulent, deceptive, or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers." The DFI contends CybrCollect is violating N.D. Admin. Code § 13-04-02-08 because N.D.C.C. § 6-08-16 does not explicitly provide for electronic collection of NSF fees without the check writer's signed authorization. The DFI asserts that construing N.D.C.C. § 6-08-16 to be statutory permission for a merchant or a merchant's agent to unilaterally take the NSF fee from a check writer's account without written authorization makes the statute unconstitutional. The DFI cites Garrison Memorial Hospital v. Rayer, 453 N.W.2d 787 (N.D.1990), in which this Court considered the constitutionality of the issuance of an ex parte writ of attachment under N.D.C.C. ch. 32-08.1 on a debtor's property. In considering the constitutionality of the statutorily-authorized prejudgment seizure of property, this Court stated, "a debtor must ordinarily be afforded a hearing before his property may be seized at the instance of a creditor." Id. at 791. This Court gave the following requirements for an ex parte prejudgment attachment to be valid:
In such cases, an ex parte prejudgment attachment procedure may be valid if the creditor must make a showing of the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ to a judge exercising judicial discretion whenever necessary, to aid in minimizing the likelihood of an improvident issuance of a writ.
Id. (citations omitted). The debtor must also receive a "prompt" hearing on the matter. Id.
[¶ 20] The DFI argues that under CybrCollect's procedure, CybrCollect never has to commence a civil action to debit the collection fee from the check writer's account; a judge never reviews the application to relieve the check writer of his assets; and, the check writer receives no hearing. The DFI urges a different interpretation of N.D.C.C. § 6-08-16: The statute allows a creditor or collection agency to collect the NSF fee from a check writer's account without a lawsuit, but only with the check writer's written permission. If the check writer does not give written permission, then the creditor or collection agency must institute the appropriate civil remedies available to them in order to collect. Accordingly, the DFI argues N.D.C.C. § 6-08-16 does not provide statutory permission for CybrCollect to unilaterally remove the collection fee from a check writer's account, because, if it did, it would be of doubtful constitutionality. See State ex rel. Heitkamp v. Family Life Services, Inc., 2000 ND 166, ¶ 42, 616 N.W.2d 826 (holding that if a statute may be construed in two ways, one that renders it of doubtful constitutionality and one that does not, we adopt the construction that avoids constitutional conflict).
*294 [¶ 21] The DFI contends that further support for its position is found in N.D.C.C. § 6-08-16(4). The last sentence of subsection 4 provides that notice to the debtor indicating the debtor has issued a dishonored check may contain a statement regarding "the possibility of a civil action to recover any collection fees or costs or civil penalty authorized by this section." N.D.C.C. § 6-08-16(4). The DFI argues that this language, in addition to the constitutional issues previously discussed, lead to the conclusion that N.D.C.C. § 6-08-16 does not provide the authorization to unilaterally debit an NSF check writer's bank account.
[¶ 22] Finally, the DFI argues that because it lacks the statutory authority to do so, CybrCollect's actions are "fraudulent, deceptive, or misleading representation or means to collect or attempt to collect claims," which is also a violation of N.D. Admin. Code § 13-04-02-08. We disagree.
[¶ 23] Section 6-08-16(2), N.D.C.C., provides: "The person is also liable for collection fees or costs, not in excess of twenty-five dollars, which are recoverable by the holder, or its agent or representative, of the check, draft, electronic funds transfer authorization, or order." Section 6-08-16(4), N.D.C.C., sets forth the form for a notice of dishonor that notifies the person "you must pay or tender to" the holder sufficient funds to cover the NSF check and collection fees within ten days or a civil penalty is also recoverable. The issue of whether the DFI commissioner correctly interpreted a statute is a question of law fully reviewable by our Court. State v. American West Community Promotions, Inc., 2002 ND 98, ¶ 7, 645 N.W.2d 196. Our primary goal in statutory construction is to ascertain the intent of the legislature. Id. at ¶ 14. We first look to the plain language of the statute and give words their ordinary meaning. Id. "If a statute is ambiguous, extrinsic aids useful in construing the statute to determine legislative intent include the object sought to be obtained, the legislative history, and the administrative construction of the statute." Hamich, Inc. v. State ex rel. Clayburgh, 1997 ND 110, ¶ 13, 564 N.W.2d 640. Section 6-08-16, N.D.C.C., is not ambiguous. The plain language of the statute cannot be read to prohibit a holder of an NSF check from electronically debiting collection fees without a written authorization from the check writer.[1] There is nothing in N.D.C.C. ch. 13-05 that prohibits the procedures used by CybrCollect. Furthermore, none of the regulations promulgated under N.D.C.C. § 13-05-06(4) to carry out the purpose of N.D.C.C. ch. 13-05 specifically prohibit the procedures used by CybrCollect. The DFI has rulemaking authority, but it has not exercised it on this issue. N.D.C.C. § 13-05-06(4). The function of the courts is to interpret the law, not to legislate. Doyle v. Sprynczynatyk, 2001 ND 8, ¶ 16, 621 N.W.2d 353 (citing Fetzer v. Minot Park Dist., 138 N.W.2d 601, 604 (N.D.1965) (holding we cannot legislate, regardless of how much we might desire to do so or how worthy an argument. If the rule is wrong, the legislature has ample power to change it, but the duty of the judiciary is to enforce the law as it exists)).
[¶ 24] CybrCollect contends its business practice is not prohibited by North *295 Dakota law and is instead governed by the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693, et seq. and Regulation E, 12 C.F.R. Part 205, issued by the Federal Reserve Board to carry out the purpose of the Act. 12 C.F.R. § 205.1(b). The Federal Reserve Board has taken the position that a check submitted for payment by a customer that is returned for insufficient funds and re-presented electronically through the ACH system is outside the scope of the Act, but electronic debits for NSF fees are subject to the Act and Regulation E. See Commentary to 12 C.F.R. § 205.3(b)(1)(v) and Commentary to 12 C.F.R. § 205.3(c)(1)(1). Under Regulation E, electronic fund transfers for non-recurring debits, such as NSF fees, may be authorized "where the consumer has received notice that a fee imposed for returned checks will be debited electronically from the consumer's account." Commentary to 12 C.F.R. § 205.3(c)(1). The DFI concluded in its Order that while notice is sufficient under Regulation E, CybrCollect's sign did not constitute adequate notice, because CybrCollect could not verify the sign was always placed in an area that might give a check writer notice of its contents. During oral argument, DFI indicated there were federal court decisions supporting its position that CybrCollect was not providing adequate notice to consumers. DFI submitted several post-argument decisions for our review. These decisions can be distinguished because they do not interpret the EFTA, 15 U.S.C. §§ 1693, et seq. or Regulation E, 12 C.F.R. Part 205, but rather they interpret the FDCPA, 15 U.S.C 1692. We are not persuaded by the DFI's arguments and conclude its interpretation of the statutes is not supported by the law and its finding is not supported by a preponderance of the evidence. See N.D.C.C. § 28-32-46(1), (5).

B. Violation of NACHA Operating Rules
[¶ 25] The DFI contends CybrCollect's collection practices violate the NACHA Operating Rules. Because CybrCollect contractually agreed in two separate contracts to abide by the NACHA rules, its knowing violation of the agreements violates N.D. Admin. Code § 13-04-03-01 because it is "conduct which will bring reproach upon the industry or the commissioner of financial institutions" and violates N.D. Admin. Code § 13-04-02-08 because it is a deceptive means to collect. The DFI argues CybrCollect's agreement with Wells Fargo Bank requires CybrCollect to comply with NACHA rules, which require a check writer's written authorization before debiting the check writer's account for NSF fees. Therefore, the DFI contends CybrCollect is intentionally and knowingly violating this agreement with both Wells Fargo Bank and the NACHA each time it accomplishes an NSF fee debit. We are not persuaded by the DFI's argument that CybrCollect's alleged breach of its agreement with Wells Fargo Bank is a violation of N.D.C.C. ch. 13-05 or any of the regulations enacted to carry out its purpose. These contracts were never offered into evidence and even if they had been and a breach of contract were proven, it would not be evidence of a violation of N.D.C.C. ch. 13-05.
[¶ 26] The DFI argues that because NACHA Operating Rules have been incorporated into North Dakota law, violation of NACHA rules violates state law. The DFI further argues the NACHA Rules are "clearing house" and "funds-transfer" rules as provided under N.D.C.C. ch. 41-04.1. The DFI contends that given the repeated statutory reference to and incorporation of clearing house and fund-transfer rules in state law, the NACHA rules are the correct place to look to determine CybrCollect's responsibilities with regard *296 to its electronic debiting practices. Therefore, the DFI argues that because the NACHA rules have been incorporated into state law, CybrCollect's actions in submitting electronic debit entries without the check writer's signed authorization violates state law, authorizing the DFI to order them to cease and desist. We disagree.
[¶ 27] First, North Dakota's version of Article 4 of the Uniform Commercial Code is not applicable to electronic debits of NSF collection fees. The legislature adopted N.D.C.C. ch. 41-04 virtually verbatim from Article 4 of the Uniform Commercial Code. Section 41-01-04(1)(i) applies to "items" that are defined as "an instrument or a promise or order to pay money handled by a bank for collection or payment." An "instrument" is a "negotiable instrument." N.D.C.C. §§ 41-04-04(3)(i) and 41-03-04(1) and (2). A "negotiable instrument" is an "unconditional promise or order to pay a fixed amount of money." N.D.C.C. § 41-03-04(1). A "promise" is "a written undertaking to pay money." N.D.C.C. §§ 41-04-04(3)(o) and 41-03-03(1)(i). An "order" is "a written instruction to pay money." N.D.C.C. §§ 41-04-04(3)(k) and 41-03-03(1)(f). Therefore, an electronic debit does not meet the definition of "item" under N.D.C.C. ch. 41-04. Consequently, electronic debits of NSF fees are outside the scope of N.D.C.C. ch. 41-04.
[¶ 28] Second, the references to "clearinghouse" and "fund-transfer" rules in N.D.C.C. tit. 41 are specific and limited. Title 41, N.D.C.C., gives no indication that its references to "clearinghouse" and "fund-transfer" rules is meant to be an incorporation of the rules into North Dakota law. See N.D.C.C. tit. 41. Third, N.D.C.C. § 41-04.1-08 expressly states, "[t]his chapter does not apply to a funds transfer any part of which is governed by the Electronic Fund Transfer Act of 1978 as amended from time to time." Therefore, the North Dakota Legislative Assembly expressly acknowledges that consumer electronic fund transfer transactions are subject to the Electronic Fund Transfer Act. Fourth, some states have adopted their own version of the EFTA. See, e.g., Mass. Stats. 167B § 1, et seq. Our legislature has recently adopted legislation regulating electronic fund transfers from consumer accounts, amending N.D.C.C. § 6-08-16(2) requiring the holder of electronic funds transfer authorization, who uses the automated clearinghouse network to collect the collection fees or costs, to comply with the network's rules and regulations. See 2005 N.D. Sess. Laws ch. 86, § 15. As of the date of this case, however, it had not done so. Therefore, at the time of the DFI order, consumer electronic fund transactions in North Dakota remain subject only to the EFTA and Regulation E.

C. Violation of the FDCPA
[¶ 29] The DFI contends CybrCollect is violating 15 U.S.C. 1692c(b), the Federal Fair Debt Collection Practices Act. Consequently, according to the DFI, CybrCollect is in violation of N.D. Admin. Code § 13-04-02-04(6), which states debt collectors may not "[v]iolate sections 804 through 810 of the Federal Fair Debt Collection Practices Act." The FDCPA states:
(b) COMMUNICATION WITH THIRD PARTIES. Except as provided in section 804, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency *297 if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.
15 U.S.C. 1692c(b).
[¶ 30] Under North Dakota law, an administrative hearing may not be held unless the parties have been served with "a written specification of issues for hearing or other document indicating the issues to be considered and determined at the hearing." N.D.C.C. § 28-32-21(3)(c). In the Notice of Hearing and Specification of Issues provided to CybrCollect, the issues were: "Whether CybrCollect has engaged in acts, practices, or transactions in violation of N.D.C.C. ch. 13-05 such that the Commissioner may impose a cease and desist order against CybrCollect under the provisions of N.D.C.C. ch. 13-05, and whether such acts, practices, or transactions require further relief beyond the imposition of a cease and desist order." These were the issues CybrCollect received notice of and the issues before the ALJ.
[¶ 31] In a letter dated July 29, 2003, the DFI commissioner requested that CybrCollect brief two additional issues related to the FDCPA: (1) whether CybrCollect's contact with the check writer's financial institution inquiring whether sufficient funds were available to re-present the NSF check is a "communication with third parties," which is prohibited by 15 U.S.C. § 1692c(b); and, (2) whether CybrCollect's debiting of a check writer's account is a communication that necessitates CybrCollect's sending of a written notice to the debtor according to 15 U.S.C. § 1692g(a).
[¶ 32] CybrCollect argues the actions of the DFI in expanding the scope of this case to include new legal theories raised after the first ALJ hearing violates the procedural requirements of the Administrative Agencies Practice Act. See N.D.C.C. ch. 28-32. Our Court has held that "[d]ue process requires a participant in an administrative proceeding be given notice of the general nature of the questions to be heard, and an opportunity to prepare and to be heard on those questions." Saakian v. N.D. Workers Compensation Bureau, 1998 ND 227, ¶ 11, 587 N.W.2d 166. We have stated that notice is adequate if it fairly apprises the party of the nature of the proceedings. Id. "These due process principles are embodied in N.D.C.C. § 28-32-05(3)(c), which requires a written specification of issues before an administrative hearing...." Id. "Basic notions of fundamental fairness dictate a person challenging an agency action must be adequately informed in advance of the questions to be addressed at the hearing so the person can be prepared to present evidence and arguments on those questions." Id. In this case, the specification of issues was broadly stated as whether CybrCollect had engaged in acts in violation of N.D.C.C. ch. 13-05, but the record makes it clear that the alleged violation was CybrCollect's failure to obtain a written authorization from the check writer prior to electronically collecting collection fees.
[¶ 33] On April 19, 2003, CybrCollect signed an agreement with the DFI that CybrCollect could only collect collection fees electronically if it verified the check writer had signed a written authorization. The agreement provided the restriction would remain in force until the DFI, district court, or Supreme Court entered a final order. The ALJ framed the issue before him as "Without a written authorization from the debtor can a fee of $25.00 be collected electronically from an account?" After the administrative hearing, the DFI raised an entirely new violation and asked CybrCollect to brief it. The DFI alleged a violation by CybrCollect of *298 N.D. Admin. Code § 13-04-02-04(6) because of its violation of the Federal Fair Debt Collection Practices Act, 15 U.S.C. 1692(b), which prohibits communication by the debt collector with the debtor's bank. CybrCollect did not have any prior notice of this alleged violation and no opportunity to prepare and present evidence on the issue to the ALJ. We conclude CybrCollect did not receive adequate notice of this violation, was unfairly surprised and prejudiced. The DFI, therefore, cannot rely on this alleged violation to support its cease and desist order and decision in this case.

V
[¶ 34] The DFI argues an award of attorney's fees was improper because its actions with regard to CybrCollect's NSF fee collection practice are "substantially justified" as required by N.D.C.C. § 28-32-50. This Court addressed the issue of "substantial justification" as follows:
We have adopted the federal courts' interpretation of substantial justification:
In Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490, 504 (1988), the United States Supreme Court construed `substantially justified' to mean `"justified in substance or in the main"  that is, justified to a degree that could satisfy a reasonable person.' The court observed that `a position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.' Id.[, 487 U.S. at 565, 108 S.Ct. at 2550, 101 L.Ed.2d] at 504.
Peterson v. North Dakota Dept. of Transp., 518 N.W.2d 690, 696 (N.D.1994).
[¶ 35] The DFI argues, therefore, that considering CybrCollect violates its Wells Fargo Bank and ACH agreement with each singular ACH transaction, a "reasonable person" would find its attempt to stop CybrCollect's NSF fee collection process to be "substantially justified." Therefore, CybrCollect is not entitled to attorney's fees and costs.
[¶ 36] CybrCollect argues that because the DFI's conduct, including issuing a cease and desist order, without basis for a violation of North Dakota law and raising new issues after the hearing before the ALJ which resulted in unnecessary expense and loss of business, has been egregious and lacked "substantial justification," the award of attorney's fees and costs is justified.
[¶ 37] Because of our resolution of the issues raised in this appeal, we affirm the district court's award of attorney's fees to CybrCollect.
[¶ 38] The DFI further argues the amount of the award was not justified and CybrCollect counters on cross appeal that the award of attorney's fees should be increased to include the amount of its Wisconsin attorney's fees.
[¶ 39] CybrCollect requested an award of attorney's fees and costs under N.D.C.C. § 28-32-50 and Rule 54(e)(2), N.D.R.Civ.P. The trial court found it was reasonable to award attorney's fees to CybrCollect, which resulted from the representation by the attorneys of the Serkland Law Firm, but not the attorneys of the Foley and Larndner Law Firm. The trial court found that the fees of the Foley and Larndner Firm "may be duplicative, they would result in legal costs far in excess of what would be assessed locally and that including them would make the award unreasonably high." We have identified the factors in N.D.R. Prof. Conduct 1.5(a) as a guide for the trial court in determining the reasonableness of the fees it shall award. T.F. James Co. v. *299 Vakoch, 2001 ND 112, ¶ 23, 628 N.W.2d 298. We have said that all factors must be considered and no single factor controls. Id. "A trial court is considered an expert in determining the amount of attorney fees." State Farm Fire and Cas. Co. v. Sigman, 508 N.W.2d 323, 327 (N.D.1993). Its decision concerning the amount and reasonableness of the attorney's fees will not be overturned on appeal absent a clear abuse of discretion. Id. In this case, the trial court considered appropriate factors. We are not persuaded that the trial court's award of attorney's fees was an abuse of discretion.

VI
[¶ 40] We conclude all other arguments raised by the DFI to be without merit. We affirm the amended judgment of the district court reversing the order of the DFI.
[¶ 41] GERALD W. VANDE WALLE, C.J., ALLAN L. SCHMALENBERGER, D.J., and CAROL RONNING KAPSNER, J., concur.
[¶ 42] The Honorable ALLAN L. SCHMALENBERGER, D.J., sitting in place of SANDSTROM, J., disqualified.
[¶ 43] Justice WILLIAM A. NEUMANN, a member of the Court when this case was heard, resigned effective March 14, 2005, and did not participate in this decision. The Honorable DANIEL J. CROTHERS did not participate in this decision.
NOTES
[1] The legislature amended subsection 2 of section 6-08-16, N.D.C.C., effective August 1, 2005, to state: "If the holder of the check, draft, electronic funds transfer authorization, or order or the holder's agent or representative uses the automated clearinghouse network to collect the collection fees or costs, that person shall comply with the network's rules and requirements." 2005 N.D. Sess. Laws ch. 86, § 15.